# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————

CLAUDIA FELDER,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　)　　　Civil Action No. 12-11192-DJC
　　　　　　　　　　　　　　　　　　　　)
ALEXANDRA PONDER, PATRICK WETZEL, )
and CHILDREN'S HOSPITAL　　　　　　　)
CORPORATION,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　　　)
———————————————————————————)

## MEMORANDUM AND ORDER

**Casper, J.**　　　　　　　　　　　　　　　　　　　　　　July 30, 2012

## I.　　Introduction

Petitioner Claudia Felder ("Felder") seeks an order from this Court for the return of her fourteen year-old daughter (herein referred to as "K.W."), to Switzerland pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and its implementing legislation, the International Child Abuse Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.* Felder claims the wrongful retention of K.W. under the Hague Convention by Respondent Alexandra Ponder ("Ponder"), K.W.'s godmother, Patrick Wetzel ("Wetzel"), K.W.'s father, and Children's Hospital Corporation ("Children's Hospital") where she has been treated. Wetzel has moved to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, the motion to dismiss is GRANTED.

1

## II.       Factual and Procedural Background

Since Wetzel and Ponder have moved to dismiss, the Court accepts as true the well-pleaded factual allegations in the complaint and "indulge[s] every reasonable inference in the pleader's favor."  Aguilar v. U.S. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007).  In deciding a motion to dismiss for lack of subject matter jurisdiction, where the complaint's factual allegations are "illuminated, supplemented, or even contradicted by other materials in . . . record, [the Court] need not confine [its] jurisdictional inquiry to the pleadings" and "may consider those other materials."  Id.  The plaintiff bears the burden of establishing the existence of subject matter jurisdiction.  Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996).  As discussed *infra*, to invoke the Court's jurisdiction under the Hague Convention, the petitioner must set forth facts alleging that a wrongful removal or retention has occurred.  See Toren v. Toren, 191 F.3d 23, 27-30 (1st Cir. 1999) (dismissing a petition for return of child for lack of jurisdiction because the petitioner failed to allege facts showing that the child had been wrongfully retained or removed).  The motion to dismiss challenges the Court's original subject matter jurisdiction over actions under the Hague Convention pursuant to 42 U.S.C. § 11603(a), on the grounds that Felder has failed to show that K.W. has been wrongfully retained within the meaning of the Hague Convention.

Although Felder, Ponder and Wetzel hotly contest the motivations that gave rise to their respective actions and who should prevail in this action, the basic facts giving rise to the issue of subject matter jurisdiction are largely not in dispute.

A.      K.W.'s Stay in the United States

K.W. is a citizen of Switzerland.  Verified Emergency Petition for Return of Child ("Pet.") at ¶ 12.  When K.W.'s parents divorced in August 2007, the Uster District Court in Switzerland granted Felder custody of K.W. and her two sisters.  Id. at ¶ 13, Ex. C (Divorce Decree).  Ponder is K.W.'s godmother; she and Felder have known each other for over twenty years.  Id. at ¶ 17.  In September 2011, Felder sent K.W. to the United States to study at Central Catholic High School ("Central Catholic") in Lawrence, Massachusetts.  Id. at ¶¶ 19, 20.  Felder agreed to have Ponder, a resident of Haverhill, Massachusetts, care for K.W. while she attended school in the United States. Id. at ¶ 19.  Although she resided here during the school year, K.W. flew back to Switzerland for approximately one week in December and returned to school on January 3, 2012.  Id. at ¶ 21. Throughout the 2011-2012 school year, Ponder stayed in regular contact with Felder and consulted with her regarding K.W.'s progress in school and sought advice from her regarding K.W.'s care and well-being.  Id. at ¶ 23.  At some point, Ponder began complaining about K.W.'s behavior and expressed doubts about her ability to continue caring for K.W.  Id. at ¶ 24.

On May 19, 2012, K.W. attempted suicide.  Id. at ¶ 25.  The record indicates that this attempt came on the heels of Felder's suggestion that K.W. should return to Switzerland.  Id., Ex. E (Ponder's affidavit attached to Petition for Appointment of Guardian of Minor).  K.W. was taken to the emergency room at Holy Family Hospital in Methuen, Massachusetts.  Id. at ¶ 26.  She was subsequently admitted to the inpatient psychiatric unit at Children's Hospital.  Id. at ¶ 27, Ex. E. Ponder notified Felder of K.W.'s emergency hospitalization and Felder agreed that K.W. should receive immediate medical care to ensure her safety and well-being.  Id. at ¶ 28.

Throughout the first three weeks of K.W.'s hospitalization, Felder monitored K.W.'s progress through Ponder and the medical team at the Hospital.  Id. at ¶ 29.  Felder also sought the advice and involvement of K.W.'s long time physician and psychotherapist in Switzerland and other Swiss medical professionals regarding K.W.'s care.   Id.   After K.W. had been hospitalized for about three weeks, medical staff proposed that K.W. be discharged from the Hospital to McLean Hospital, a psychiatric facility, in Belmont.  Id. at ¶ 31.

After consulting with medical professionals in Switzerland, Felder proposed that K.W. be transferred back to Switzerland for further treatment.  Id. at ¶ 32.  Felder and K.W.'s physician in Switzerland advised the Hospital staff that they would take responsibility for K.W.'s health and safety and would personally accompany K.W. back to Switzerland.  Id.  On June 7, 2012, Felder was contacted by a social worker of the Hospital and informed that K.W. could not return to Switzerland. Id. at ¶ 33.  By mid-June, Ponder and Felder's relationship had broken down and Ponder no longer responded to Felder's inquiries about K.W.  Id. at ¶ 36.  On June 17, 2012, Felder refused to give her consent to Ponder's request for guardianship over K.W., including an order that K.W. remain in the United States, and told Ponder that any prior consent to temporary guardianship had been terminated.  Id. at ¶ 37.  On June 20, 2012, Felder traveled to Boston and informed Ponder that she was revoking her temporary role as K.W.'s guardian.   Id. at ¶ 39.

**B.    City of Lucerne Office of Guardianship Authority and Court Proceedings in Lucerne and Massachusetts**

On the heels of K.W.'s suicide attempt, K.W.'s father, Wetzel, contacted the City of Lucerne Office of Guardianship Authority ("the Guardianship Authority") concerning his daughter's situation.  Id. at ¶ 41.  The Guardianship Authority issued an order by letter dated June 21, 2012 to Felder, stating that the "endangerment of [K.W.] can only be avoided by withdrawing your right to

4

determine the place of residence of [K.W.], or concretely the parental custody right."   Ponder's

Verified Answer ("Ans."), Ex. H at 2 (June 21, 2012 letter from the Guardianship Authority to

Felder).   The Guardianship Authority issued its precautionary decision withdrawing Felder's

parental custody rights, ordering that K.W. continue to be hospitalized for further treatment at

Children's Hospital and prohibiting Ponder from removing K.W. from the clinic at that time.  Id.

After the Guardianship Authority's decision withdrawing Felder's custody rights, Ponder

sought and obtained temporary guardianship over K.W. in Essex County Probate and Family Court

("Probate and Family Court") on June 25, 2012.  Pet. at ¶ 46, Ex. E (June 25, 2012 Petition for

Appointment of Guardian of Minor).   That same day, the Guardianship Authority issued a letter to

Children's Hospital, referencing its precautionary order of June 21, 2012 regarding K.W.'s

placement at Children's Hospital in Boston, and stated that because of K.W.'s stay in the United

States, "American authorities are responsible for initiating child protective measures.  Since the local

circumstances are of decisive importance, it appears advisable for your authorities to take over the

proceedings in the interest of the child's well-being."   Ans., Ex. J (June 25, 2012 letter of the

Guardianship Authority to Children's Hospital).

On June 27, 2012, Felder requested reconsideration of the Guardianship Authority's June

21, 2012 decision withdrawing her custody rights and requested "its complete repeal."  Ans., Ex.

L at 2.  (July 11, 2012 letter from the Guardianship Authority).

On July 10, 2012, Felder filed the instant emergency petition for K.W.'s return to

Switzerland, claiming the wrongful retention of K.W. under the Hague Convention by Ponder,

Wetzel and Children's Hospital.  D. 1, 2.  The following day, the Guardianship Authority issued

a letter stating that it "always has jurisdiction over child protection matters" but that "since [K.W.]

has resided in America for almost one year, this is a matter of international concern . . . the authorities at the place of residence of the child have subject-matter jurisdiction . . . ." Ans., Ex. L at 2. (July 11, 2012 letter from the Guardianship Authority). The letter further stated that "[b]y the decision of June 25, 2012, the Essex Probate and Family Court . . . appointed Alexandra Ponder as the preliminary custodian of [K.W.]. The American authorities thus acknowledged their jurisdiction due to residency and ordered the child protection measures they deemed necessary" and that because of that decision "the basis for the continuation of the child protection proceedings by the Lucerne guardianship office . . . ceases to exist" and "the precautionary decision [of June 21, 2012] is to be repealed." Id.

The same day the Guardianship Authority issued this decision, Felder filed an emergency motion to vacate Ponder's guardianship of K.W. in Probate and Family Court, which was denied. Ans., Ex. K (July 11, 2012 Order of Probate and Family Court). In rendering its decision, the Probate and Family Court (Blake, J.) reasoned that "the best evidence" before it demonstrated that Felder's "custody rights have been withdrawn" and that the last letter by the Guardianship Authority, does not make clear that those rights "had been reinstated." 7/11/2012 Probate and Family Court Hearing Tr. at 55-56. The Court indicated that if Felder obtained an order that she has retained her custody rights, it would reconsider vacating the motion to appoint Ponder as K.W.'s temporary guardian. Id. at 56. The Court further ordered that visitation with Felder and K.W. take place in accordance with the recommendation by K.W.'s treating therapist. Id. at 56-57.

On July 12, 2012, the District Court of Lucerne in Switzerland dismissed Felder's complaint against the Guardianship Authority regarding its June 21, 2012 ruling. Reply, Ex. 5 (7/12/2012 order of the District Court of Lucerne), D. 24-5. The Court found that "[w]ith the repeal of the

precautionary ruling handed down June 21, 2012, the revocation of the complainant's parental custody ordered by the custodianship authorities of Lucerne becomes obsolete.  The complainant no longer has any legally protected interests in continuing the proceedings before the Lucerne District Court.  This shall not affect any child protection actions offered by the US authorities."  Id.

On July 16, 2012, Ponder filed her verified answer in this Court, D. 12, and Wetzel has moved to dismiss for lack of subject matter jurisdiction.  D. 17.  The Court held a hearing on this matter on July 20, 2012.  At the hearing, Ponder joined in Wetzel's motion to dismiss.  The parties have since submitted supplemental briefing.  D. 20, 23, 24-26.

## III.    Discussion

### A.    Custody Rights

"To petition for the return of a child under the Hague Convention, the petitioner must establish by a preponderance of the evidence that the child was 'wrongfully removed or retained' within the meaning of the convention."  Kufner v. Kufner, 519 F.3d 33, 39 (1st Cir. 2008) (quoting 42 U.S.C. § 11603(e)(1)).  A retention is wrongful when:   "(a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercises but for the removal or retention."  Hague Convention, art. 3.  Thus, as petitioner, Felder bears the burden of proving by a preponderance of the evidence that:  (1) K.W.'s habitual residence was Switzerland at the time of the retention; (2) she had custody rights over K.W. at the time of the retention; and (3) she was exercising those custody rights.  Nicolson v. Pappalardo, 605 F.3d 100, 103 (1st Cir. 2010) (citing Hague Convention, art. 3); 42 U.S.C. § 11603(e)(1).

### 1.     K.W.'s Habitual Residence

Since whether there has been a breach of Felder's custody rights over K.W. depends on the law of the state in which she was habitually resident immediately before the wrongful retention, the Court must determine K.W.'s habitual residence.  See Whallon v. Lynn, 230 F.3d 450, 455-56 (1st Cir. 2000) (noting that whether a petitioner has "rights of custody" under Art. 5 requires the Court to look to the relevant provisions of the law of the child's habitual residence).

Felder argues that K.W.'s habitual residence is Switzerland.  The determination of a child's habitual residence "begins with the parents' shared intent or settled purpose regarding their child's residence."  Nicolson, 605 F.3d at 104 & n. 2.  It is undisputed that K.W. was born and raised in Switzerland and that both of her parents still reside there.  See Pet. at ¶¶ 4, 12, 18; Ans. at 2-3, Ex. L at 2 (July 11, 2012 letter from the Guardianship Authority).  K.W. also resided in Switzerland until she came to the United States with her mother's permission to attend school.  Pet. at ¶¶ 12, 19-20.  Felder had custody of K.W. since August 2007 and allowed her to come to the United States to attend Central Catholic in Lawrence, Massachusetts, arranging that Ponder would care for K.W. while she studied here.  Id. at ¶¶ 19, Ex. C (Divorce Decree).  Shortly after purchasing K.W.'s tickets for travel to the United States in August 2011, Felder booked her return flight to Switzerland for July 12, 2012. Id. at ¶ 22.  K.W. also flew back home to Switzerland in late December between the fall and spring semesters.  Id. at ¶ 21.  Based on this record, even focusing, as the Court must, on where the child was habitually resident immediately before the alleged wrongful retention in June 2012, Felder's intent and settled purpose was that K.W.'s habitual residence would remain in Switzerland even as she allowed K.W. to attend school in the United States.

Although Ponder and Wetzel claim that K.W.'s habitual residence is now the United States, the record does not support this contention.  Even if the Court credits the Defendants' contention that Felder has acquired a four-year student visa for K.W. to attend school in the United States, such fact does not negate Felder's intent or settled purpose that K.W. would temporarily attend school here but retain a habitual residence in Switzerland.  See Poliero v. Centenaro, 373 Fed. Appx. 102, 105-106 (2d Cir. 2010) (finding that children's expressed preference for staying in the United States and their schooling for one year in New York did not alter intention that children's habitual residence remain Italy).  Moreover, the Defendants would be hard-pressed to argue that Felder's intent that  K.W.'s habitual residence be Switzerland only emerged in this litigation since they have repeatedly alleged that K.W.'s recently attempted suicide came after Felder made clear her intent that K.W. return to Switzerland.  See Ans. at 2-3.  Moreover, there is no suggestion that Wetzel, K.W.'s father, was even involved in the decision for K.W. to attend school in the United States.  He, therefore, would have little ground upon which to now argue that he had an intent or settled purpose to have her residence be here in the United States either now or when K.W. left Switzerland in September 2011 to attend school here.

Despite Ponder or Wetzel's arguments otherwise, this is not a case in which "the evidence points unequivocally to the conclusion that the child has become acclimatized to [her] new surroundings and that [her] habitual residence has consequently shifted," Poliero, 373 Fed. Appx. at 105, to the United States.  "This is a difficult test to satisfy, and a child's habitual residence will only be found to have shifted due to acclimatization, if the child's relative attachments to the [the two possible habitual residences] have changed to the point where requiring return to the original forum would not be tantamount to taking the child out of the family and social environment in which

its life has developed."  Id. at 105 (internal quotation marks and citations omitted).  Poliero is instructive here.  There, the petitioner alleged that his wife had wrongfully retained their children in New York in violation of the Hague Convention, seeking return of the children to Italy after the children had attended school in New York for a year.  Id. at 104-105.  After the district court granted the father's petition, his wife challenged the grant of the petition on the grounds that the children's habitual residence was no longer Italy, but the United States.  Id.  The Second Circuit concluded that the children's habitual residence was Italy despite the fact that the couple leased two apartments in New York and the children went to school there for a year.  Id. at 105.  The Court further found that although the children had adjusted well to living in New York and expressed a preference for remaining there, the children had not become so acclimatized to the United States to render it their habitual residence since they had also maintained continuous connections with Italy during their stay in the United States, returning to Italy for vacations and staying in contact with friends and family there.  Id. at 105-106.  Similarly, here, that K.W. may have established friendships and connections with teachers during her fall 2011 and spring 2012 semesters in school, (Ans. at 2; Wetzel Mot. at 4, D. 17), does not unequivocally demonstrate that K.W.'s acclimatization to the United States had become so complete that returning her to Switzerland would be equivalent to taking her out of a family and social environment in which her life has developed.  K.W. returned to Switzerland between the fall and spring semesters to spend time with her Mother and sisters, (Pet. at ¶ 21; Ans. at 2), and there is no suggestion that since returning to the United States for her spring semester, she had not maintained regular contact with her family and friends in Switzerland, despite the allegedly volatile relationship between K.W. and her mother.  Thus, it cannot be said that K.W.'s habitual residence shifted to the United States.

### 2.    Felder's Custody Rights over K.W.

Even having determined that K.W.'s habitual residence is Switzerland, as Felder argues, the Defendants still contend that Felder does not retain custody rights under Swiss law in light of the series of orders issued by the Guardianship Authority.   A petitioner must have rights of custody to petition for return of a child.   Whallon, 230 F.3d at 455.   "[R]ights of custody include rights relating to the care of the child and the right to determine the child's place of residence."   Kufner, 519 F.3d at 39 (citing Hague Convention, art. 5).   The court now turns to this inquiry to determine whether Felder has met her initial burden of showing the wrongful retention of K.W.

This case is unusual in at least two respects from other cases alleging wrongful retention or removal of a child under the Hague Convention.   First, neither parent absconded with K.W. to the United States.   K.W. is in the United States because Felder, who now claims her wrongful retention here, allowed her to come here under Ponder's care.   Pet. at ¶ 37.[1]   Second, although Felder has named K.W.'s father, Wetzel, who still resides in Switzerland, as a Defendant, it is Ponder who has sought temporary guardianship in the United States and seeks to have K.W. stay here.

Although, undisputedly, Felder was granted sole custody of K.W., as part of her divorce decree by the Uster District Court in Switzerland in August 2007 (Pet., Ex. C), the Swiss Civil Code grants the Guardianship Authority the authority to determine parental custody rights in all matters apart from divorce decrees or modification of same.   Specifically, under the Swiss Civil Code, the Swiss courts has jurisdiction to amend court orders regarding custody awards and child protection during divorce proceedings, proceeding to alter a divorce decree or in proceedings to modify

---

[1]After arriving in Boston, Massachusetts on June 20, 2012, Felder also informed Ponder that she was revoking her temporary role as guardian for K.W.   Id. at ¶ 39.

measures for the protection of the marital union, but "[i]n all other cases jurisdiction lies with the guardianship authorities." Swiss Civil Code, art. 315*b*, D. 24-1 at 7.  Accordingly, the Guardianship Authority has the power to withdraw parental custody from a parent.  Art. 307, 310-312, D. 24-1 at 4-5.  The Court, therefore, does not agree with Felder's suggestion that the Guardianship Authority acted beyond its authority in withdrawing her custody rights with its June 21, 2012 precautionary order.  (Opp. at 4-5, D. 20).  In fact, the District Court of Lucerne made clear in its July 12, 2012 order dismissing Felder's complaint that the Guardianship Authority's actions, including its first decision to "revo[ke] [Felder's] parental custody" was neither procedurally erroneous nor constituted a violation of Felder's rights. 7/12/2012 Order of the District Court of Lucerne, D. 24-5. That is, as of June 21st, the Guardianship Authority took the action that it was empowered to take and revoked Felder's parental custody.  If the sequence of Guardianship Authority's actions had stopped there, it is clear that Felder would not have custodial rights in Switzerland, K.W.'s habitual residence, and her Petition before this Court would fail.

The fact is, however, that the Guardianship Authority did take further action after June 21, 2012.  Felder points to such action to argue that she retains her custody rights over K.W.  However, the Guardianship Authority's subsequent rulings did not unequivocally reinstate her custody rights.  The Court agrees that the June 21, 2012 decision withdrawing Felder's custody rights over K.W. (granted to her in August 2007 by the Uster District Court in Switzerland) was a provisional, emergency ruling given the urgent situation involving K.W.'s hospitalization in the United States. The Guardianship Authority's July 11, 2012 letter confirms this conclusion.  In that letter, the Guardianship Authority detailed the history of the child protection proceedings before it and explained that its previous decision to withdraw Felder's custody rights was based on the

information it had at the time that Felder wanted to remove K.W. from the hospital against doctors'

recommendations and that at the time of its decision, no Massachusetts court had exercised

jurisdiction over the matter to ensure K.W.'s health and safety given the exigency of the situation.

Ans., Ex. L at 2.  (July 11, 2012 letter from the Guardianship Authority).  The letter further

explained that because the Probate and Family Court ordered child protection measures for K.W.

in appointing Ponder as her temporary guardian on June 25, 2012 - after the Guardianship

Authority's June 21, 2012 decision - a Massachusetts court had now exercised jurisdiction over the

matter, and, as a result, there was no longer a need for the child protection measures the

Guardianship Authority had implemented in its June 21, 2012 decision and it repealed that decision.

Id.  The District Court of Lucerne's dismissal of Felder's complaint (in which she sought the repeal

of the Guardianship Authority's June 21, 2012 decision) is telling, but not dispositive.  That court's

finding that because the Guardianship Authority repealed its June 21, 2012 precautionary decision

withdrawing Felder's custody rights, "the revocation of [her] parental custody ordered by the

custodianship authorities [on June 21, 2012] of Lucerne becomes obsolete" and that Felder "no

longer has any legally protected interests in continuing proceedings before the Lucerne District

Court," D. 24-5, simply means that there was no longer any case in controversy before that court

since the Guardianship Authority had withdrawn its own June 21, 2012 decision.

But that the Guardianship Authority withdrew its June 21, 2012 order in light of the

proceeding in Probate and Family Court, in which Ponder was appointed as a temporary guardian,

does not mean that Felder retains her custodial rights.  That is, the one authority, the Guardianship

Authority, that has the power to determine custody rights, did not decline to take further action, but

instead deferred to the actions of the Probate and Family Court in the United States.  There has been

no affirmation by the Guardianship Authority of Felder's custody rights even in light of its knowledge of the Probate and Family Court proceedings in which Ponder was appointed as K.W.'s temporary guardian.  Ans., Ex. L at 2  (Guardianship Authority noting that the Probate and Family Court had appointed Ponder as preliminary custodian).

Although Felder relies on <u>Nicolson</u> to argue that the actions of the Guardianship Authority do not defeat her custodial rights, that case is distinguishable.  In <u>Nicolson</u>, a mother brought her child to Maine from Australia and obtained an interim protective order from Maine state court withdrawing the children's allegedly abusive father's custody rights and granting her full temporary custody of her child.  605 F.3d at 102.  The petitioner had agreed to the entry of the protective order and, at the same time, filed a petition for return of his children to Australia under the Hague Convention.  <u>Id.</u>  In rejecting the respondent's argument that the effect of the protective order was that Nicolson had acquiesced to the child's retention in Maine, the First Circuit noted that under the Convention, "[t]he sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall be not a ground for refusing to return a child under th[e] Convention.'" <u>Nicolson</u>, 605 F.3d at 106 (quoting Hague Convention, art. 17).  <u>Nicolson</u> noted that even an order granting full custody agreed to by the petitioner in a state court did not "defeat [his] right under the Hague Convention to have permanent custody determined" in Australia.  <u>Id.</u> at 109. <u>Nicolson</u> states for the proposition that "[t]he Convention . . . confers the privilege of deciding custody on the state of habitual residence." <u>Id.</u> at 106 (citing Hague Convention, arts. 1(b), 16, 19); <u>see</u> <u>Whallon</u>, 230 F.3d at 455 (noting that the important principle underlying the Hague Convention that "a court deciding a petition for return of a child . . . may not decide the merits of an underlying custody dispute"). In this case, the Swiss authority regarding custody has spoken:  first, to revoke

Felder's custodial rights on June 21st and second, to withdraw that decision on July 11 in deference to the temporary guardianship decision by the Probate and Family Court.

On the record presently before the Court and in the absence of confirmation by the Guardianship Authority that Felder retains her custodial rights, the Court finds that Felder has failed to show, by a preponderance of evidence, the wrongful retention of K.W. in the United States.[2]

Moreover, in the absence of such a showing and in light of the Court's ruling dismissing this case, the Court notes that there are ongoing proceedings in the Probate and Family Court to determine the best interest of K.W. in which all the parties to this litigation have participated, including Felder, and that court has already indicated its intention to appoint a guardian ad litem to represent K.W. in any further proceedings there.

## IV.   Conclusion

For the foregoing reasons, Wetzel and Ponder's motion to dismiss is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2]Felder's counsel has urged this Court to obtain from Swiss authorities pursuant to Article 15 of the Hague Convention "a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, . . . ."  Article 15, D. 1-1 at 4. Making such a request is at the discretion of this Court and, given both the emergency nature of the Petition and the rulings of the Guardianship Authority in Switzerland, the last of which deferred to Probate and Family Court's ongoing proceedings regarding K.W., the Court declines to make such request.